NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190184-U

NO. 4-19-0184

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 11, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Livingston County |
| JOSHUA RICHARDSON, | ) | No. 18CF161 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1      *Held*: The appellate court remanded for further proceedings where the trial court failed to conduct an initial *Krankel* inquiry.

¶ 2      In November 2018, following a bench trial, defendant, Joshua Richardson, was found guilty of four counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)). On appeal, defendant argues he received ineffective assistance of counsel because his attorney "fail[ed] to ask him whether he had committed the charged offenses." Defendant also argues the trial court erred by failing to conduct an initial inquiry into his *pro se* posttrial allegations of ineffective assistance of counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984). We remand for further proceedings.

¶ 3                           I. BACKGROUND

¶ 4        On May 31, 2018, the State charged defendant with three counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1)) (West 2008)), all arising out of allegations made by his sisters, S.W. and S.R., regarding separate incidents that occurred almost a decade before. The State later amended the charges to include a fourth count of predatory criminal sexual assault of a child. Defendant's case proceeded to a bench trial in November 2018.

¶ 5        During defendant's trial, the State presented evidence that, in July 2008, defendant, who was then 28 years old, was released from prison and moved into his father's home for "a month to two months." At that time, several of defendant's siblings also lived in the home, including S.W. and S.R. who were then "10 or 11" years old and 9 years old, respectively.

¶ 6        During its case-in-chief, the State called S.W. to testify. According to S.W., one evening while defendant was still living with the family, she, her father, and some of her siblings were watching a movie in their living room. At some point during the evening, defendant called S.W. to his bedroom where he "motioned" her to his bed and had her lie down next to him. Defendant then began touching S.W.'s arm and stomach and eventually began touching her "lower body." According to S.W., defendant removed her pants and then penetrated her vagina with his fingers. S.W. testified that, after a time, defendant shifted his body, spread her legs, and penetrated her vagina with his tongue. Later, defendant lowered his pants and penetrated S.W.'s vagina with his penis. Defendant stopped penetrating S.W. and let her leave his bedroom when another of her brothers called for her and told her it was time for her to take a shower.

¶ 7        The State also called S.R. According to S.R., during the period when defendant was living with the family, defendant asked her if she wanted a "back tickle," which was a game S.R. and her siblings played where they would "tickle each other's back." S.R. agreed, went with defendant to his bedroom, and lay down on his bed where defendant began tickling her back. After

a few minutes, defendant stopped. S.R. testified that, when she turned around to see why defendant stopped, she saw that he had "dropped his pants." According to S.R., defendant then pushed her back down on the bed, "moved [her] shorts to the side," and "tried to put his penis in [her]." After S.R. "[f]elt something touching" her vagina, she ran from the room.

¶ 8        Defendant testified on his own behalf. During his testimony, defendant confirmed he had moved into his father's home in 2008 but stated he only lived there for two weeks. While defendant lived there, he was employed at his father's construction company. Defendant testified he had given S.R. one "back tickle," but when he did it the two were "in the living room" and his father and other members of the family were also present. In response to defense counsel's question whether he "remember[ed] having any contact between just [him] and [S.W.]" on the day that, according to S.W., defendant penetrated her, defendant responded: "I don't. I don't recall the day in general."

¶ 9        After closing arguments by both parties, the trial court orally announced its decision. It began by stating the case "boil[ed] down to credibility." The court found S.W. and S.R. to be credible witnesses, noting S.W. "was not evasive in any way," "did not seem to be making things up or adding details that she thought might support some theory," and "was consistent." Similarly, the court noted S.R. "was a little bit reserved but answered the questions, did not provide a lot of extra details that perhaps[,] if she was making this up[,] she thought could help her out." In contrast to S.W. and S.R., the court determined defendant "was not a very credible witness." The court noted defendant had not made "a real strong[,] flat denial that anything like this happened or would ever happen," although the court acknowledged defendant's denial was "implicit in some of [his] answers." Additionally, the court stated defendant's "body language and his manner while testifying suggested that he was hiding things, that he thought he was pretty

smooth, and he was going to be able to talk his way out of it." The court ultimately found defendant guilty of all four charges.

¶ 10　　　　　Prior to defendant's sentencing hearing, he sent a nine-page letter to the trial court. Relevant to this appeal, defendant's letter contained the following passage:

> "You said I never actually denied the accusations against me. As I had said before, I answered the questions I was asked. Neither side asked that question. I honestly thought there would have been more questioning. There was so much that was never brought up or brought to the court's attention."

Defendant's letter continued by describing a "theory on [S.W.'s and S.R.'s] reason or motivation" to fabricate their allegations against him. After explaining his theory, defendant wrote: "Again, there was so much that should have been brought to the court's attention yet never was and I don't understand why. I provided my attorney with all of this and so much more."

¶ 11　　　　　The trial court later conducted defendant's sentencing hearing. During the hearing, the court noted it had received defendant's letter and had forwarded it to the state's attorney and to defense counsel without reading it. Before imposing defendant's sentence, the court allowed defendant to make a statement in allocution, at which time he began reading from the letter he had sent to the court. During defendant's statement, he remarked:

> "You said I never actually denied the allegations against me. As I said before, I answered the questions as I was asked. Neither side asked me that question. I honestly thought there would have been more questioning from both sides."

Several minutes into defendant's statement in allocution, the State objected, arguing defendant was improperly "rehashing the evidence of the case." The court agreed and instructed defendant

to limit his remarks to matters "that pertain[ ] to an allocation [*sic*] statement." Defendant chose not to resume his statement and the court began to orally review the factors in aggravation relevant to defendant's case. At one point during its remarks, the court referenced defendant's "paramour" who, although it is not entirely clear from the record, possibly was sentenced by the court the previous day for a crime related to defendant. During the court's remarks, the following exchange occurred between defendant and the court:

"THE COURT: You know, the conduct of [defendant] has created so much damage to so many different people; and I think that is the point that the legislature is trying to make in pointing out that this is such a heinous crime that it's a natural life sentence. Morally it's incomprehensible; and it's very difficult for many of the people here and especially the victims in the case who span a lot of people, including [defendant's paramour] who received the sentence she deserved; but she certainly was manipulated and abused—

DEFENDANT: No. She did not receive the sentence she deserved.

THE COURT: Don't interrupt me. Don't interrupt me.

DEFENDANT: What are you going to do, give me life?

THE COURT: All right. You can take him out if he's going to mouth off.

DEFENDANT: You need to reconsider her sentence. She was not guilty. For what? Huh? Eight years? You gave her a break this last time on that. Six years and you only serve three.

THE COURT: So [defendant] has been taken out. The only thing I would like to add then since he is not here is that many of the things he started stating in his statement in allocution obviously took a lot of things out of context and twisted

- 5 -

a lot of words. I do believe it was further manipulation on his part towards his victims. I would note one victim, I believe it was a victim, left the room in the middle of his statement in allocution.

I think that statement was completely self-serving. The evidence at trial was overwhelming. The [d]efendant is certainly entitled to maintain his innocence. I don't fault him for that. But he is not entitled to take the attitude he took in court here today and to continue to manipulate and abuse his victims in this case, nor is he entitled to question the [c]ourt in the manner that he questioned the [c]ourt."

The court ultimately sentenced defendant to four consecutive terms of natural life imprisonment.

¶ 12       This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14       On appeal, defendant argues defense counsel provided ineffective assistance of counsel by "failing to ask him whether he had committed the charged offenses." Defendant also argues the trial court erred by failing to conduct an initial *Krankel* inquiry based on his allegations of ineffective assistance of counsel. We agree with defendant's second contention.

¶ 15       "The common law procedure first recognized in *Krankel* serves the narrow purpose of allowing the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims." (Internal quotation marks omitted.) *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 65, 145 N.E.3d 544. Our supreme court has established the following analytical framework for determining whether new counsel should be appointed when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel:

"[T]he trial court is not required to automatically appoint new counsel when a defendant raises such a claim. [Citation.] Rather, the law requires the trial court to

conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel. [Citations]. Specifically, the trial court must conduct an adequate inquiry \*\*\*, that is, inquiry sufficient to determine the factual basis of the claim. [Citation]. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed. [Citation.]" (Internal quotation marks omitted.) *People v. Ayres*, 2017 IL 120071, ¶ 11, 88 N.E.3d 732.

¶ 16        To trigger a *Krankel* inquiry, a defendant must "raise[ ] a *pro se* posttrial claim of ineffective assistance of trial counsel." *Id.* "[A] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention." (Internal quotation marks omitted.) *Id.* "Accordingly, a defendant may raise the claim orally or in writing, either by filing a formal posttrial motion with the court or by informally providing a letter." *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 13, 128 N.E.3d 1100. However, to trigger the inquiry, a defendant must, at a minimum, state: "(1) he has a complaint about trial proceedings and (2) that complaint involves something his attorney did or failed to do." *Schnoor*, 2019 IL App (4th) 170571, ¶ 69. "The issue of whether the circuit court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*." (Internal quotation marks omitted.) *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 24, 93 N.E.3d 664.

¶ 17        In the present case, defendant asserts he raised an ineffective assistance of counsel claim both in his *ex parte* letter to the trial court and in his statement in allocution. Specifically, defendant points to the following passage in his letter to the court, which he notes was substantially

verbalized in his statement in allocution:

"You said I never actually denied the accusations against me. As I had said before, I answered the questions I was asked. Neither side asked that question. I honestly thought there would have been more questioning. There was so much that was never brought up or brought to the court's attention."

Defendant also points to the following passage from his letter:

"Again, there was so much that should have been brought to the court's attention yet never was and I don't understand why. I provided my attorney with all of this and so much more."

According to defendant, these statements were sufficient to require the trial court to conduct an initial *Krankel* inquiry. We agree.

¶ 18    In addressing defendant's claim, we find *People v. Lobdell*, 2017 IL App (3d) 150074, 83 N.E.3d 502, instructive. In *Lobdell*, after the defendant's conviction, but before his sentencing hearing, he sent the trial court a letter in which he claimed he was arrested in violation of his constitutional rights. *Id.* ¶ 15. The defendant concluded his letter by stating, "why [my attorney] never mentioned this during trial I do not know, that[']s why I am mentioning it now your [H]onor." *Id.* Although the defendant also read his letter at sentencing, the court did not address his allegation. *Id.* ¶¶ 16, 34. The Third District found this to be error, noting the defendant had "raised an issue his counsel did not raise at trial *** and voiced that he did not understand his counsel's failure to raise the issue." *Id.* ¶ 37. The court concluded this was sufficient to "raise[ ] an ineffective assistance of counsel issue that the circuit court should have addressed." *Id.*

¶ 19    As in *Lobdell*, defendant's statements here were minimally sufficient to trigger a *Krankel* inquiry. In his statements, defendant clearly complained about the trial proceedings: the

- 8 -

evidence that was not presented on his behalf. Additionally, defendant's complaints are based on his counsel's conduct: defendant stated "[n]either side" (*i.e.*, neither the state's attorney nor defense counsel) asked him to deny the allegations against him and he "d[id]n't understand" why defense counsel failed to present certain evidence on his behalf. Accordingly, the trial court erred by failing to inquire into the factual bases of defendant's ineffective assistance of counsel claims.

¶ 20        In reaching our conclusion, we reject the State's argument that the trial court was not required to conduct a *Krankel* inquiry because "defendant's statement was not clearly an ineffective assistance of counsel claim." Citing *People v. Whitaker*, 2012 IL App (4th) 110334, 974 N.E.2d 445, the State notes the trial court is not required to conduct a *Krankel* inquiry where a defendant's *pro se* statement "is subject to more than one interpretation and is not clearly an ineffective assistant [*sic*] of counsel claim." The State points to the last paragraph of defendant's letter, which states:

> "In conclusion to all of this I just want you to know that my intentions with this letter are not to try and get you to reverse your decision of the guilty verdict against me. It[']s to try showing you that there is more to this than what was brought out in that court room. It[']s to try showing you that I am not the person you are already convinced that I am. There is always another side to the story. There is always another side that was never told. Or if it was told, it was not heard by the right person or persons. Please consider that."

According to the State, this paragraph demonstrates that a *Krankel* inquiry was not required because defendant's purpose in sending the letter to the court was to "try showing [the court] that [he is] not the person [it was] already convinced [he is]" and not to raise a claim of ineffective assistance of counsel. We disagree. Although defendant did state that, by writing the letter, he

hoped to change the court's perception of him, he also stated that he intended to do so by presenting more information "*than what was brought out in that court room.*" (Emphasis added.) In other words, by writing the letter, defendant intended to present the court with evidence that had not been presented at trial. As defendant made clear in other parts of his letter, the evidence of which he spoke had not been presented at trial due to his counsel's failure. Taking defendant's letter as a whole, it is clear that his complaints about the trial proceedings, which he claims were directly related to his counsel's performance, were sufficient to require a preliminary *Krankel* inquiry.

¶ 21    The proper remedy following a finding that the trial court failed to conduct an inquiry into the factual basis of a defendant's allegations of ineffective assistance of counsel is to remand the case for a preliminary *Krankel* inquiry. *Ayres*, 2017 IL 120071, ¶ 26. Here, in addition to remanding his case, defendant also requests that we exercise our discretion under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) and direct that his *Krankel* claim be heard by a different judge on remand. Defendant claims Judge Bauknecht "has already developed firm beliefs about [his] credibility and has expressed a belief that he is manipulative." We note the State did not respond to defendant's request for a remand before a different judge. In light of this omission, and in the exercise of our discretion, we remand for a preliminary *Krankel* inquiry before a different judge. See *People v. Jolly*, 2014 IL 117142, ¶ 46, 25 N.E.3d 1127 (remanding for a new preliminary *Krankel* inquiry before a different judge). In remanding this case, we express no opinion regarding the merit, if any, of defendant's claim of ineffective assistance of counsel.

¶ 22    Because remand for an initial *Krankel* inquiry is necessary, we decline to address defendant's claim of ineffective assistance of counsel at this time. See *People v. Bell*, 2018 IL App (4th) 151016, ¶ 37, 100 N.E.3d 177 (declining to address defendant's other claims on appeal after finding the trial court failed to conduct a preliminary *Krankel* inquiry).

¶ 23                               III. CONCLUSION

¶ 24        For the reasons stated, we remand for the trial court to conduct an inquiry into defendant's *pro se* posttrial claim of ineffective assistance of counsel.

¶ 25        Cause remanded for further proceedings.