NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190682-U

NO. 4-19-0682

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
October 8, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JOSHUA RICHARDSON, | ) | No. 18CF142 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court failed to inquire into defendant's *pro se* posttrial claims of ineffective assistance of counsel, requiring remand for a preliminary *Krankel* inquiry. Additionally, defendant's request that his case be reassigned to a different judge on remand is granted.

¶ 2    Following a bench trial, the trial court found defendant, Joshua Richardson, guilty of four counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)) and two counts of criminal sexual assault (*id.* § 11-1.20(a)(3)). The court sentenced him to four consecutive natural life sentences and two consecutive 15-year prison terms. Defendant appeals, arguing (1) he did not knowingly and voluntarily waive his right to a jury trial; (2) he was denied his right to a fair trial because the trial judge, who presided over his previous bench trial, was biased against him; (3) he was denied his right to a fair trial because the court relied on

"mis-remembered" evidence when finding him guilty of the charged offenses; (4) he was denied his constitutional right to be present at all critical stages of his trial because the court viewed video evidence in private; (5) he was denied his right to a fair trial because of the cumulative effect of the alleged errors; and (6) the court erred by failing to conduct a *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984)) into his *pro se* posttrial claims of ineffective assistance of counsel. We remand for a preliminary *Krankel* inquiry and direct that the proceedings on remand be assigned to a different judge.

¶ 3                                    I. BACKGROUND

¶ 4            In May 2018, the State charged defendant in the underlying cause of action—Livingston County case No. 18-CF-142—with four counts of predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1)) and two counts of criminal sexual assault (*id.* § 11-1.20(a)(3)). The charges were based on allegations that defendant committed acts of sexual penetration with his daughters, F.R. and D.R. While that case was pending, the State additionally charged defendant—in Livingston County case No. 18-CF-161—with four counts of predatory criminal sexual assault of a child based upon allegations that he sexually abused his sisters, S.W. and S.R., approximately a decade before.

¶ 5            In October 2018, defendant waived his right to a jury trial in both cases. The following month, Judge Jennifer H. Bauknecht presided over defendant's bench trial in case No. 18-CF-161. She found him guilty of all four charged offenses in that case and sentenced him to four consecutive terms of natural life in prison. Defendant appealed his convictions, arguing he received ineffective assistance of counsel and Judge Bauknecht erred by failing to conduct an initial *Krankel* inquiry into his *pro se* posttrial ineffective-assistance claims. *People v. Richardson*,

2021 IL App (4th) 190184-U, ¶ 2. This court agreed with defendant's *Krankel* claim and remanded to the trial court so that an inquiry could be made into the factual basis of his *pro se* allegations. *Id.* ¶ 21. Additionally, we ordered that the case be remanded for a preliminary *Krankel* inquiry before a different judge, noting defendant requested such relief on the basis that "Judge Bauknecht 'has already developed firm beliefs about [his] credibility and has expressed a belief that he is manipulative' " and the State "did not respond to defendant's request." *Id.*

¶ 6        In April 2019, Judge Bauknecht presided over defendant's bench trial in the underlying case, case No. 18-CF-142. The State presented testimony from F.R. and D.R., ages 10 and 16, respectively, at the time of trial. Evidence showed F.R. and D.R. were defendant's daughters and half-siblings to one another. Both testified that over a period of years, defendant engaged in sexual acts with them, including placing his penis inside their mouths and vaginas. F.R. testified defendant began touching her inappropriately when she was six years old, and the abuse did not end until she was nine. D.R. testified that defendant engaged in inappropriate sexual conduct with her from the ages of 6 to 15. Additionally, both acknowledged being interviewed at the Children's Advocacy Center (CAC) and initially denying any sexual abuse. F.R. explained that she did not report what defendant was doing because she was "scared that [defendant] was going to hurt [her]," while D.R. testified she "was worried nothing was going to happen and when [she] went home it was going to be bad."

¶ 7        In addition to F.R. and D.R.'s testimony, the State presented testimony from S.W.—one of defendant's victims in case No. 18-CF-161—as propensity evidence under section 115-7.3 of Code of Criminal Procedure of 1963 (Criminal Code) (725 ILCS 5/115-7.3 (West 2018)). S.W., who was 22 years old at the time of trial, testified defendant was her brother and that

he was approximately 17 years older than her. She recalled an incident that occurred when she was about 11, when defendant called her into a bedroom, touched her vagina with his fingers and tongue, and penetrated her vagina with his penis. Finally, a CAC interview with F.R., during which she reported sexual abuse by defendant, was submitted by the State and admitted into evidence.

¶ 8 Defendant testified on his own behalf and denied the allegations against him. Additionally, he presented testimony from Andy Rork, a Livingston County sheriff's deputy. Rork testified he interviewed D.R. at the Sheriff's Department following her CAC interview, in which she denied any sexual abuse by defendant. He acknowledged that when he interviewed D.R., she did not report the occurrence of any sexual abuse by defendant until Rork lied to her by stating that defendant "was in another room confessing."

¶ 9 Following the presentation of evidence and the parties' arguments, Judge Bauknecht continued the matter for a ruling on defendant's bench trial, stating she intended to watch the recorded CAC interview with F.R. that was tendered by the State. In June 2019, Judge Bauknecht announced her ruling in the case in open court, stating she had reviewed both F.R.'s CAC interview and her notes in the case. She found defendant guilty of each charged offense, stating F.R., D.R., and S.W. testified credibly while defendant lacked credibility in his own testimony. Judge Bauknecht explained the rationale behind her credibility rulings. She noted F.R. appeared emotional, did not embellish, gave straightforward answers, used words that would be expected of a child her age, did not change her testimony on cross-examination, appeared confident in her answers, and provided testimony that "was consistent overall" with her recorded CAC interview. Additionally, Judge Bauknecht noted D.R. was emotional, consistent, "used her own words," and did not appear to embellish her testimony. Further, she stated S.W. was "a credible,

consistent witness."

¶ 10      In finding defendant was not credible, Judge Bauknecht stated defendant had "no affect" and "stared down" the victims as they testified. She also found defendant's testimony corroborated the victims' statements in several respects with respect to ancillary details and his "simple no I did not answers" lacked credibility. Further, Judge Bauknecht stated as follows:

"I take these allegations seriously. I hold the State to their burden of proof on these charges beyond a reasonable doubt. That's a high burden. It's not a burden that's impossible to reach, but I absolutely would not want to be wrong on something like this. It's, you know, it's an extremely difficult subject that affects many people's lives.

And so[,] I take the State's burden very seriously. I think the State has met their burden. In fact, they have gone above and beyond showing beyond a reasonable doubt the [d]efendant's guilt based upon the testimony that was presented of [F.R.], [D.R.], and [S.W.]."

¶ 11      In July 2019, defendant's sentencing hearing was conducted. The parties presented argument to the trial court, and defendant made a statement in allocution. During his statement, defendant maintained his innocence of the charged offenses and asserted as follows:

"It is the [c]ourt's judgment that I am guilty though there is literally no evidence of any kind against me to support such a judgment. There is, however, physical evidence such as messages and medical exam records that were not brought to the [c]ourt's attention that would have proven my innocence; and both prosecution and my public defender have this evidence within their possession and

- 5 -

yet it was not brought forth as I had requested it to be.

Along with that, yet again as with my previous case ***, though I submitted multiple witness lists well in advance to trial and sentencing, not one witness was called in my behalf. These witnesses had they been called as I requested would have given testimony at trial that would have also proven my innocence."

¶ 12 Following defendant's statement, Judge Bauknecht entered judgments of conviction on all six counts against him. She imposed mandatory natural life sentences for each of defendant's four predatory-criminal-sexual-assault-of-a-child convictions and consecutive 15-year prison sentences for both criminal-sexual-assault convictions. In setting forth her decision, Judge Bauknecht stated defendant was entitled to maintain his innocence but that she disagreed with his assertion that there was no evidence to support his convictions. Rather, the judge found there was "an abundance of evidence from the testimony of [F.R.] and [D.R.]" and that those victims' statements "also corroborated each other." She further noted case No. 18-CF-161, stating as follows:

"And while not necessarily in this case but since [defendant] alluded to the other case that involved his sisters, those were also corroborated with each other. But most importantly I think it's worth noting that they all corroborate each other.

I've got four victims. I have absolutely no doubt that there are more than four victims of [defendant]. But I have four victims who had the strength and courage to come forward and where [defendant] had physically and emotionally abused them and sexually abused them from a very young age. And while [defendant] is entitled to maintain his innocence, the fact that he does not accept

responsibility makes it extremely difficult to see how there would be any potential for rehabilitation. Before I can consider rehabilitative potential, there certainly would have to be an acknowledgment of one's wrongdoings.

And in this case, [defendant] fails to acknowledge that. He doesn't have to. But then I certainly see no way for him to be rehabilitated. He is a monster. He is a danger to this community. The State is absolutely correct that it is necessary for the protection of these young ladies, his daughters, his sisters and I agree his grandchildren someday need to be protected from him.

\*\*\*

So[,] I agree with the State that life in prison is not only the statutorily mandated sentence but it is also the appropriate sentence in this case. It is absolutely necessary to protect the public in this case from a person who has been a predator over his family starting with his sisters at a very young age moving into his own daughters."

¶ 13       In August 2019, defendant filed both a motion to reconsider his sentence and a motion challenging the sufficiency of the evidence against him and asking the trial court to reconsider its guilty findings or grant him a new trial. In October 2019, Judge Bauknecht conducted a hearing and denied both motions.

¶ 14       This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16       On appeal, defendant raises several issues. However, the State concedes that error occurred with respect to defendant's assertion that the trial court improperly failed to conduct a

preliminary *Krankel* inquiry into his *pro se* posttrial claims of ineffective assistance of counsel and that remand for further proceedings is necessary. We accept the State's concession and agree that error occurred, and remand is required.

¶ 17        A *Krankel* inquiry "is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of trial counsel." *People v. Jolly*, 2014 IL 117142, ¶ 29, 25 N.E.3d 1127. Under *Krankel* and its progeny, the following procedure is required:

> "[W]hen a defendant presents a *pro se* posttrial claim of ineffective assistance of counsel, the trial court should first examine the factual basis of the defendant's claim. If the trial court determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion. However, if the allegations show possible neglect of the case, new counsel should be appointed." *People v. Moore*, 207 Ill. 2d 68, 77-78, 797 N.E.2d 631, 637 (2003).

¶ 18        "[A] *pro se* defendant is not required to do any more than bring his or her claim to the trial court's attention." *Id.* at 79. The claim may be raised "orally or in writing, either by filing a formal posttrial motion with the court or by informally providing a letter." *People v. Rhodes*, 2019 IL App (4th) 160917, ¶ 13, 128 N.E.3d 1100. To prompt the court into making a preliminary *Krankel* inquiry, "at a minimum, a defendant must say *** (1) he has a complaint about trial proceedings and (2) that complaint involves something his attorney did or failed to do." *People v. Schnoor*, 2019 IL App (4th) 170571, ¶ 69, 145 N.E.3d 544.

¶ 19        On review, "[t]he operative concern *** is whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel."

*Moore*, 207 Ill. 2d at 78. Whether the court properly conducted a preliminary *Krankel* inquiry is a legal question that is subject to *de novo* review. *Jolly*, 2014 IL 117142, ¶ 28.

¶ 20    Here, during his statement in allocution at sentencing, defendant complained about his trial attorney's failure to present certain evidence in his case. Specifically, he alleged the existence of physical evidence, including "messages" and medical records, "that would have proven [his] innocence." He asserted his attorney had that evidence in his possession but neglected to have it "brought forth" at trial as defendant requested. Defendant further claimed that he "submitted multiple witness lists" in advance of his trial. He maintained none of those witnesses were called to testify on his behalf although they would have provided testimony that would also have "proven [his] innocence."

¶ 21    As argued by defendant and acknowledged by the State, defendant's statements amounted to *pro se* posttrial claims of ineffective assistance of counsel and were minimally sufficient to trigger an inquiry into the factual basis for defendant's allegations. Because no inquiry was conducted in this case, we remand the matter to the trial court and direct that it conduct a preliminary *Krankel* inquiry. See *People v. Ayres*, 2017 IL 120071, ¶ 26, 88 N.E.3d 732 (remanding for a preliminary *Krankel* inquiry where the circuit court failed to conduct any inquiry into the factual basis of the defendant's ineffective-assistance allegations).

¶ 22    Although the parties agree that error occurred and remand is required, they disagree on whether this court should address the remaining issues presented by defendant on appeal and whether defendant's case should be remanded for a *Krankel* inquiry before a different judge. Defendant contends this court should address all of the issues he raises on appeal because doing so would result in "[t]he most efficient use of judicial resources." Further, he asks this court to

direct that the proceedings on remand be conducted by a different judge on the basis that Judge Bauknecht has developed firm beliefs about his credibility and described him as "a monster." The State responds by arguing that we should decline to address defendant's other claims because the proceedings on remand "could make those issues moot." Additionally, it contends that Judge Bauknecht did not exhibit any bias or prejudice against defendant and that because she is familiar with defendant's case, she is in the best position to conduct a preliminary *Krankel* inquiry.

¶ 23        First, as asserted by the State, this court has declined to address any remaining issues raised by a defendant on appeal when remand for failing to conduct a preliminary *Krankel* inquiry is required. See *People v. Bell*, 2018 IL App (4th) 151016, ¶ 37, 100 N.E.3d 177; *Rhodes*, 2019 IL App (4th) 160917, ¶ 21. In particular, we have noted that "[d]epending on the result of the preliminary *Krankel* inquiry, [the] defendant's other claims may become moot." *Bell*, 2018 IL App (4th) 151016, ¶ 37. Contrary to defendant's assertions on appeal, addressing issues that may become moot after further proceedings is not the most efficient way to utilize judicial resources. Additionally, we note that should the issues raised in this appeal not become moot following remand and a *Krankel* hearing, defendant may reassert them if he elects to appeal from the proceedings on remand. See *People v. Lawson*, 2019 IL App (4th) 180452, ¶¶ 32-35, 139 N.E.3d 663 (finding that when the defendant appeals following a remand for a *Krankel* hearing, a reviewing court may consider claims that arise from the *Krankel* hearing, as well as claims brought in the defendant's first appeal even without this court explicitly having stated in the first appeal that it was retaining jurisdiction).

¶ 24        Here, aside from his *Krankel* claim, defendant raises issues on appeal concerning (1) his jury waiver, (2) judicial bias based on Judge Bauknecht presiding over his first bench trial

in case No. 18-CF-161, (3) the court "mis-remember[ing]" evidence, (4) the court viewing video evidence in private, and (5) cumulative error. We decline to address the remaining issues in this appeal because they could be rendered moot by further proceedings in the case. As set forth above, defendant may raise those issues in a subsequent appeal from the *Krankel* hearing that is to occur on remand.

¶ 25    Second, Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994) "permits a reviewing court, in its discretion, to make any order or grant any relief that a particular case may require," including "reassign[ing] a matter to a new judge on remand." *Eychaner v. Gross*, 202 Ill. 2d 228, 279, 779 N.E.2d 1115, 1146 (2002). Here, as asserted by defendant, Judge Bauknecht's comments at sentencing in this case indicate that she has developed strong opinions about defendant, for example, describing him as "a monster." Because the proceedings on remand may well require further assessments of defendant's credibility, we find it appropriate to grant defendant's request that his case be reassigned. Accordingly, in the exercise of our discretion, we direct the preliminary *Krankel* inquiry that is to occur on remand be before a different judge.

¶ 26                                   III. CONCLUSION

¶ 27    For the reasons stated, we remand the matter for a preliminary *Krankel* inquiry into defendant's *pro se* ineffective-assistance-of-counsel claims, and we direct that those further proceedings on remand be reassigned to a new judge.

¶ 28    Remanded with directions.