NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (4th) 210738-U

NO. 4-21-0738

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 2, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| JOSHUA RICHARDSON, | ) | No. 18CF161 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Robert M. Travers, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, holding that (1) defendant failed to establish his trial counsel provided ineffective assistance by failing to question him during his trial testimony as to whether he ever sexually penetrated the victims and (2) the trial court's finding that defendant did not establish possible neglect of the case following a *Krankel* inquiry was not manifestly erroneous.

¶ 2    Following a bench trial, defendant, Joshua Richardson, was convicted of four counts of predatory criminal sexual assault of a child and sentenced to four consecutive terms of natural life imprisonment. Defendant appeals, arguing his trial counsel provided ineffective assistance by failing to ask him during direct examination whether he had ever sexually penetrated the victims. Defendant also argues he demonstrated during a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), that his trial counsel possibly neglected his case with regard to this claim. Finally, defendant argues he established possible neglect of the

case with regard to the claim that counsel misled him regarding the guilty plea of a codefendant in a separate case. We affirm.

¶ 3                                                    I. BACKGROUND

¶ 4            On May 31, 2018, defendant was charged with four counts of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008)) (renumbered as 720 ILCS 5/11-1.40 by Pub. Act 96-1551, art. 2, § 5 (eff. July 1, 2011)) for allegedly committing acts of sexual penetration with two of his sisters, S.R. and S.W., when they were under the age of 13 years old and he was 17 years old or older. The information alleged the incidents occurred between July 2008 and July 2009. Defendant waived his right to a jury trial, and the matter proceeded to a bench trial.

¶ 5            S.W. testified that an incident occurred at her father's house shortly after defendant was released from prison. She was approximately 10 or 11 years old, and defendant was in his "[m]id to late 20's" at that time. S.W. was watching a movie with her father and some of her siblings, and defendant was in his bedroom. Defendant called for S.W., and she entered his bedroom. Defendant removed S.W.'s pants and inserted his finger, tongue, and penis into her vagina.

¶ 6            S.W. testified that, on another occasion, she saw her sister, S.R., running from the direction of defendant's bedroom. S.R. was crying, and S.W. followed her. Defendant subsequently approached the sisters and asked if they wanted to go to Dairy Queen with him. It was unusual for just S.R. and S.W. to go somewhere with defendant.

¶ 7            S.R. testified that an incident involving defendant occurred in the summer of 2008, shortly after he was released from prison. She was 9 years old at that time, and defendant was 19 years older than her. Defendant asked S.R. if she wanted a "back tickle." He directed her

to enter his bedroom, and he touched her vagina with his penis. She ran out of the room and went to her bedroom. S.W., who was also at home, followed her and asked what happened. Before S.R. could answer, defendant entered the room and asked S.R. and S.W. if they wanted to go to Dairy Queen. They then rode their bikes to Dairy Queen.

¶ 8 Defendant testified that he lived in his father's house for approximately two weeks after he was released from prison in 2008. During that time, he worked for his father five to six days per week from approximately 6 or 7 a.m. until 4 or 5 p.m. Defendant stated there was an occasion where S.R. approached him and asked him to give her a "back tickle." He stated he complied with her request, and this occurred in the living room. Defendant stated: "And there had been times that I had done so in front of my dad. I mean, it was nothing out of the normal." Defendant later indicated he had only tickled S.R.'s back on one occasion and other family members were present.

¶ 9 Defendant stated he heard S.W. testify concerning an incident that occurred while the family was watching a movie. The following exchange occurred between defendant and his attorney:

"Q. And where were you when the family was watching the movie, if you remember?

A. I don't recall.

Q. Do you remember having any contact between just you and [S.W.] that day or that evening while the movie was going on?

A. I don't. I don't recall the day in general."

¶ 10 Defendant testified he continued to have contact with his sisters after he moved out of his father's house and there was nothing unusual or awkward about his relationship with

them. Defendant took his sisters and brothers to Dairy Queen on multiple occasions when he was living at his father's house and after he moved out. On cross-examination, the prosecutor asked defendant if he remembered the "Dairy Queen incident." Defendant said it was possible he took only S.W. and S.R. to Dairy Queen on one occasion. The prosecutor asked defendant if he remembered the specifics of the "movie incident" S.W. testified about, and defendant said he did not.

¶ 11　Defendant's father testified as a rebuttal witness for the State. Defendant's father stated defendant lived with him for approximately one to two months after he was released from prison on parole in 2008.

¶ 12　The trial court found defendant guilty of all four counts. The court stated the case "boil[ed] down to credibility." The court found S.W. and S.R. to be "very credible" witnesses. The court noted that they answered the questions posed to them, had no motive to lie, and did not seem to be "making things up" or adding extra details. The court also stated neither of them wavered during "some pretty tough cross-examination," and their testimony was "very consistent."

¶ 13　The court also found defendant was "not a very credible witnesses." The court stated it seemed "unusual" that defendant "didn't actually deny this happening, particularly with regards to [S.W.] I believe." The court noted defendant testified he did not recall the event with S.W. The court stated:

> "I didn't hear a real strong flat denial that anything like this happened or would ever happen, and I know it's implicit in some of the answers. But the Defendant just was not real credible; and he certainly would have a much stronger motive to

not remember, which was his testimony, than the girls because he has a lot more at stake than the girls have at stake."

The court found defendant was "pretty defensive on that whole Dairy Queen thing" but noted he did not deny that he could have gone there alone with S.W. and S.R.

¶ 14    The court also noted defendant testified that he only lived at his father's house for two to three weeks, "suggesting perhaps that the time period was not long enough for anything like this to happen," but his father testified that he lived there for a longer period of time. The court concluded: "[T]he Defendant in this case was clearly not credible. He just, his body language and his manner while testifying suggested that he was hiding things, that he thought he was pretty smooth, and he was going to be able to talk his way out of it. That's the impression the Court got."

¶ 15    After the trial, defendant, *pro se*, wrote a letter to the court, stating, *inter alia*, that he did not specifically testify that he did not commit the charged offenses because neither defense counsel nor the State asked him that question. He stated: "I honestly thought there would have been more questioning. There was so much that was never brought up or brought to the court's attention."

¶ 16    During the sentencing hearing, the trial court stated it had received an *ex parte* communication from defendant, which it had not reviewed. The court indicated it had sent the document to the parties. The court advised defendant that if he had anything to say, he should say it during his statement in allocution.

¶ 17    During his statement in allocution, defendant asserted he answered the questions he was asked during his trial testimony. He kept his answers short because he "was told to keep [his] responses simple." He stated there was "so much that needed to be elaborated," but he

answered the questions he was asked truthfully. He asserted that neither side had asked him to admit or deny the allegations against him during his testimony and he thought there would have been more questioning.

¶ 18 The trial court sentenced defendant to consecutive terms of natural life imprisonment on each of the four counts.

¶ 19 Defendant appealed, arguing (1) his trial counsel provided ineffective assistance in failing to ask him whether he committed the charged offenses and (2) the trial court erred by failing to conduct a *Krankel* inquiry into his *pro se* posttrial claims of ineffective assistance of counsel. *People v. Richardson*, 2021 IL App (4th) 190184-U, ¶ 2. We remanded the matter for a preliminary *Krankel* inquiry and did not reach defendant's claim of ineffective assistance of counsel. *Id.* ¶¶ 22-24.

¶ 20 On remand, the trial court held a preliminary *Krankel* inquiry during which defendant discussed several claims of ineffective assistance of trial counsel. Relevant to this appeal, defendant stated his trial counsel advised him that Andrea Hagen, his codefendant in a separate case, had pled guilty to "a charge of participating in a sexual act with an alleged victim" in the other case. Counsel also advised defendant that Hagen had agreed to testify against him. Given this development, counsel advised defendant against proceeding with a jury trial. Defendant reluctantly waived his right to a jury trial based on counsel's advice. Defendant asserted: "I found out just days later that [Hagen] did not plead guilty to a charge of participating in a sexual act with an alleged victim ***, and further, that she, at no point in time, made any agreement to testify against me." Defendant asserted his counsel lied about Hagen "pleading guilty to a charge that she did not plead guilty to," and lied about Hagen agreeing to testify

against defendant. Defendant asserted that counsel's "purposeful deception" caused him to waive his right to a jury trial when he otherwise would not have waived that right.

¶ 21 Defendant also stated that, before he took the stand to testify at trial, his attorney advised him to "keep [his] answers simple and not to elaborate." According to defendant, he did as he was instructed. However, counsel never asked defendant if he "was in fact guilty of the allegations charged against [him]." Defendant stated he never had the opportunity to deny having committed the charged offenses because counsel failed to ask him "this apparently very necessary question." Defendant indicated he was prejudiced by this because the court stated that his failure to deny that the crimes occurred contributed to its finding that he was not a credible witness.

¶ 22 When defendant had finished discussing his claims of ineffective assistance of trial counsel, the court asked defendant's trial counsel to respond. Counsel indicated the State advised him prior to the trial that, in defendant's other case, Hagen had pled guilty to the charge of "permitting the sexual abuse of a child." The State also advised him it was prepared to call Hagen as a witness against defendant. Counsel called defendant and "advised him of this event and what [Hagen] had pled guilty to, and that the matter was set for sentencing." Counsel indicated the trial court could verify that Hagen had pled guilty to this charge by looking at the "history."

¶ 23 Counsel stated defendant had wanted to call Hagen as a witness on his behalf, but counsel advised against it. Counsel stated:

> "I *** know that had [Hagen] been called in [defendant's] behalf, she would have
> been subject to cross examination that she had pled guilty to permitting
> [defendant] to abuse one of the other children that were alleged in this; and I did

not think that that was going to be a promising piece of evidence for him, whether it would be in front of a judge or a jury."

Counsel advised defendant he would be subject to cross-examination concerning his prior criminal history if he testified at trial. Counsel recommended that defendant take a bench trial, and defendant agreed to waive his right to a jury trial.

¶ 24       Counsel stated he always told his clients that, when they are testifying, they should listen to the question asked and keep their answers as simple and direct as possible. Counsel indicated his theory of defense in this case was that there was a "late reporting" by the victims, no physical evidence, and "no corroborative evidence other than the [victims'] statements." Counsel stated:

> "[Defendant] complains about the fact that he was not asked in that as to whether or not he did this. There was a question during his examination, if I remember correctly, that posed to him if he had done something to one of the victims on a certain date; and I believe his answer was, he doesn't remember that date. So, at that point, I moved away from that line of questioning because I did not believe further answers as to, I don't remember that date, would be beneficial in the record or as to the finding by the Court, rather than just a general denial by his [*sic*] part that he didn't do anything that day. His argument had been and his information to me throughout this had been that he didn't do that; so, I don't understand why a specific date would have caused him confusion as we had talked about the fact that he would be asked that prior to him taking the stand."

¶ 25       The trial court found there was "no factual basis in relation to any of the complaints made." It found the claims lacked merit and dealt with trial strategy. The court stated

it was "somewhat troubled" by the allegation that Hagen did not plead guilty, as it was "simply checked" and "easily reviewed." The court stated: "So, as far as the relief requested in this initial phase of the Krankel hearing, it is denied." This appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27        On appeal, defendant argues he received ineffective assistance of trial counsel where counsel failed to ask him during direct examination whether he had committed the charged offenses. Alternatively, defendant argues he established at the *Krankel* inquiry that his trial counsel possibly neglected the case with regard to this claim. Defendant also argues he established possible neglect of the case with regard to his claim that counsel misled him regarding Hagen's guilty plea. We address each argument in turn.

¶ 28            A. Ineffective Assistance of Counsel: Defendant's Testimony

¶ 29        We first address defendant's claim that his trial counsel provided ineffective assistance when counsel failed to ask defendant during his trial testimony whether he committed the charged offenses. Specifically, defendant contends his counsel was ineffective for failing to ask him generally whether he had ever sexually penetrated the victims. Defendant contends he was prejudiced by counsel's failure to ask this question because the trial court's remarks during its pronouncement of guilt indicated that his failure to deny the crimes occurred contributed to the court's finding that he was not credible and "factored into" the court's finding of guilt.

¶ 30        "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36. See also *Strickland v. Washington*, 466 U.S. 668 (1984). That is, "a defendant must show that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a defendant must establish both that his counsel's performance was deficient and that he was prejudiced as a result, a failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Patterson*, 192 Ill. 2d 93, 107 (2000).

¶ 31 Here, even assuming counsel performed deficiently in failing to generally ask defendant whether he ever sexually penetrated the victims, there is no reasonable probability the outcome of the trial would have been different if counsel had asked this question. Defendant correctly notes the court's decision in this case was based on its assessment of the credibility of the witnesses. The court found the two victims to be "very credible" witnesses. The court found they had no motive to lie, did not appear to be fabricating extra details, and did not waver during cross-examination.

¶ 32 On the other hand, the court found defendant was not credible. While defendant's failure to make "a real strong flat denial that anything like this happened or would ever happen," contributed to the court's finding that defendant was not credible, it was not the sole basis for this determination. The court acknowledged that a denial that the charged conduct happened was "implicit" in some of defendant's answers. Moreover, the court also based its finding defendant was not credible on his body language and demeanor while testifying, which the court found suggested he was "hiding things." The court also noted defendant's testimony that he only lived in his father's house for two to three weeks after being released on parole was contradicted by his father's testimony that he lived there for a longer period of time.

¶ 33 Given the court's findings that the victims were "very credible" and defendant was not credible for reasons other than his failure to explicitly deny the offenses occurred, a reasonable probability does not exist that the result of the trial would have been different if counsel had generally asked defendant if he had ever sexually penetrated the victims.

¶ 34 B. Possible Neglect of the Case: Defendant's Testimony

¶ 35 Defendant alternatively argues he met the lower burden of establishing at the *Krankel* hearing that his trial counsel possibly neglected his case by failing to ask him during direct examination whether he committed the charged offenses.

¶ 36 When a defendant makes a *pro se* posttrial claim of ineffective assistance of counsel, the trial court is to employ a procedure developed in *Krankel*, 102 Ill. 2d 181, and its progeny. *People v. Roddis*, 2020 IL 124352, ¶ 34. Pursuant to this procedure, "the court should first examine the factual basis of the defendant's claim." *Id.* ¶ 35. If the court finds the claim lacks merit or "pertains only to matters of trial strategy," the court may deny the *pro se* motion without appointing new counsel. *Id.* However, if the defendant's allegations show "possible neglect of the case," new counsel should be appointed to represent the defendant at the hearing on the ineffective assistance claim. *Id.* ¶¶ 35-36. During a preliminary *Krankel* inquiry, the court may consider both the factual and legal merits of the defendant's *pro se* claims of ineffective assistance. *Id.* ¶ 61.

¶ 37 We review the trial court's determination that defendant's *pro se* claims did not demonstrate possible neglect of the case by asking if the court's decision was manifestly erroneous. *People v. Lawson*, 2019 IL App (4th) 180452, ¶ 43. "A decision is manifestly erroneous 'when the opposite conclusion is clearly evident.' " *Id.* (quoting *People v. Coleman*, 2013 IL 113307, ¶ 98).

¶ 38        Here, the trial court did not manifestly err in determining defendant failed to establish possible neglect of the case with regard to his claim that trial counsel was ineffective for failing to explicitly ask him whether he had committed the charged offenses. As we previously explained, the trial court could have reasonably found defendant was not prejudiced by his counsel's alleged deficient performance and, accordingly, that his claim lacked merit. See *supra* ¶¶ 31-33.

¶ 39                    C. Possible Neglect of the Case: Hagen's Plea

¶ 40        Defendant also argues he established at the *Krankel* hearing that his counsel possibly neglected his case by misinforming him about Hagen's plea. Defendant contends the trial court misunderstood his claim, as it indicated it believed defendant's claim was that Hagen had not pled guilty to any offense. In his brief, defendant asserts his claim was actually that counsel had "misled him about which charge she pled guilty to." Specifically, defendant contends his claim during the *Krankel* proceedings was that counsel incorrectly advised him that Hagen "pled guilty to participating in a sex act, as opposed to merely permitting the sexual abuse of a child." Defendant argues that counsel's "mischaracterization" of Hagen's plea deal led him to waive his right to a jury trial.

¶ 41        We find the trial court's determination that defendant did not establish possible neglect with regard to this claim was not manifestly erroneous. Trial counsel indicated at the *Krankel* hearing that the State had advised him prior to defendant's trial that Hagen had pled guilty to permitting the sexual abuse of a child and that it was prepared to call her as a witness against defendant. Counsel stated he relayed this information, including the charge to which Hagen had pled guilty, to defendant. The trial court could have reasonably accepted counsel's

representations and found that counsel accurately advised defendant that Hagen had pled guilty to permitting the sexual abuse of a child.

¶ 42   In reaching our holding, we note the record does not support defendant's contention that the trial court mischaracterized his argument. At the *Krankel* hearing, defendant asserted counsel incorrectly told him that Hagen pled guilty to "participating in a sexual act" with one of the victims and had agreed to testify against him. However, he never argued Hagen had actually pled guilty to a different charge than the one counsel advised him of. Notably, "participating in a sexual act" is not the name of any offense set forth in the Criminal Code of 1961 (720 ILCS 5/1-1 *et seq.* (West 2008)). Under these circumstances, the trial court could have reasonably interpreted defendant's argument as a claim that trial counsel misinformed him as to whether Hagen pled guilty to any charge and inferred defendant merely misspoke concerning the name of the offense.

¶ 43   Finally, we note that defendant does not explain why he would have chosen not to waive his right to a jury trial if counsel had accurately advised him concerning Hagen's guilty plea. It is unclear why it would have been preferable, from defendant's perspective, for Hagen to testify before a jury that she had pled guilty to permitting defendant to sexually abuse a child rather than that she participated in the abuse personally.

¶ 44                     III. CONCLUSION

¶ 45   For the reasons stated, we affirm the trial court's judgment.

¶ 46   Affirmed.